## Case No. 3,609a.
DAVIDSON et al. v. WHEELOCK et al.
Circuit Court, D. Minnesota. May Term, 1866.
[See 27 Fed. 61.]

DAVIDSON (YOUNG v.). See Case No. 18,-157.

DAVIDSON, The CLARA. See Case No. 2,791.

DAVIDSON COUNTY (BEVERLY v.). See Case No. 1,377.

## Case No. 3,610.
### DAVIE v. HATCHER.

[1 Woods, 456;[1] 10 Am. Law Reg. (N. S.) 519.]

Circuit Court, S. D. Georgia. April Term, 1871.

WAR—SUSPENSION OF STATUTES OF LIMITATION—RETROACTIVE LAWS—FEDERAL COURTS FOLLOWING STATE DECISIONS—DISCHARGE OF SURETIES.

1. The statute of Georgia, of the 14th of December, 1861, suspending the statutes of limitation then in force during the then existing war, and suspending the statutes in cases where they had commenced to run, until peace should be declared; and the ordinance passed by the convention of the people on the 31st of October, 1865, suspending the statutes of limitation in all cases, civil and criminal, from the 19th of January, 1861, until civil government should be restored or the legislature should otherwise direct, however defective they may have been in point of original authority, were ratified by the constitution of the state, of 1868.

2. The act of the 16th of March, 1869, passed by the general assembly established under the constitution of 1868, declaring that all acts of the legislature of the state, and all ordinances of the conventions of 1865 and 1868, which have the force and effect of law, and which are retroactive in their character relative to the statutes of limitation, should be held null and void in all cases in which the statute had fully run before the passage of said retroactive legislation, does not control or modify the operation of those suspensory laws of 1861 and 1865, except in cases where the statute had fully run before their passage respectively.

3. The decision of the state courts that the statute passed in 1826, and re-enacted in 1831, by which the surety or indorser of a promissory note, after it has become due, may require the holder to proceed to collect the same, and if he does not proceed so to do within three months after such requisition, the indorser or surety shall be no longer liable, does not apply where the principal does not reside in the state —that he cannot be compelled to go out of the state to sue the principal, is binding on this court.

4. The omission of the holder of a promissory note to sue the maker, who resides in another state, can, under no circumstances, as between him and the surety on the note, make the holder chargeable with gross negligence.

This cause was heard upon a motion for a new trial made by defendant.

Andrew Sloan and L. S. Downing, for the motion.

W. U. Garrard, contra.

BRADLEY, Circuit Justice. This was an action of assumpsit commenced on the 31st of December, 1869, on a promissory note, dated at Columbus, Ga., December 30, 1858, given by Reuben Allison as principal, and Samuel J. Hatcher as surety, to P. J. Phillips, executor of H. H. Lowe, or bearer, for the

---

[1] [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

sum of $1,125, payable on the 1st of January, 1860, at the agency of the Bank of Savannah, in Columbus, with interest from date if not punctually paid. The surety indorsed a waiver of protest at the maturity of the note. The action is brought by Davie, as bearer, against the defendant as executrix of the surety. It is apparent that it was not brought for nearly ten years after the note became due, and the statute of limitations for such demands in Georgia is six years.

The principal question in the case is, whether the laws and ordinances passed since the note became due have prevented the operation of the statute upon the cause of action arising thereon. The case was tried in December last, and the judge presiding ruled that the statute of limitations had been suspended so as to save the action. By an act of the legislature of Georgia passed in December, 1860, the several statutes of limitation were suspended for one year. The ordinance of secession was passed January 19, 1861, and a new constitution was adopted in March and ratified in July following. By an act passed December 14, 1861, the statutes of limitation then in force were suspended during the then existing war, and where the statute had commenced to run, it was suspended until peace should be declared. After the war the convention of the people of Georgia, assembled by the provisional governor, in pursuance of President Johnson's proclamation of June 17, 1865, met at Milledgeville, and on the 31st day of October, 1865, passed an ordinance which, amongst other things, ordained that the statutes of limitation in all cases, civil and criminal, should be suspended from the 19th of January, 1861, until civil government should be fully restored, or the legislature should otherwise direct. Besides a constitution of the state, other ordinances were passed by said convention in the form of laws, which were observed as such for several years. By the third section of article eleven of the constitution of 1868, adopted by the convention, assembled under the reconstruction acts of congress, it was declared, amongst other things, "that all acts passed by any legislative body, sitting in this state as such, since the 19th day of January, 1861, except such as were inconsistent with the constitution of the United States, or this constitution, or as may have been passed in aid of the late Rebellion," etc., should be of force in this state, but that the general assembly might alter or repeal the same, if not otherwise prohibited by the constitution. By the fifth section of the same article it was declared that all rights, privileges and immunities which might have vested in or accrued to, any person or persons under any act of any legislative body, sitting as such, or any decree, judgment or order of any court sitting in this state under the laws then of force and operation therein and recognized by the people as a court of competent jurisdiction, since the 19th of January, 1861, should be held in-

violate, unless attacked for fraud or otherwise declared invalid by or according to this constitution. The general assembly, established under this constitution by an act passed March 16, 1869, declared that all acts of the legislature of this state, and all ordinances of the conventions of 1865 and 1868, which have the force and effect of law, which are retroactive in their character relative to the statutes of limitation, should be held to be null and void, in all cases in which the statute had fully run, before the passage of said retroactive legislation. This review of the legislation which has taken place leads to the following conclusions: 1st. That the suspensory laws of 1865 and 1861, however defective they may have been in point of original authority, were ratified by the constitution of 1868. 2d. That the act of 1869 does not control or modify their operation, except as to cases in which the statute had fully run, before their passage "respectively." These points being established, the case does not present the slightest difficulty.

The ordinary statute in this case did not commence to run till January 4, 1860, and would not have fully run till January 3, 1866. It was suspended, therefore, both by the act of 1861, during the whole continuance of the war, and by the ordinance of 1865, from the 19th of January, 1861, until civil government should be fully restored. Deduct this period of suspension from the time that elapsed before the commencement of this suit, and it will be found to have commenced within six years from the maturity of the note. I have been referred to the case of Calhoun v. Kellogg, 41 Ga. 231, to show that the supreme court of this state has held that the ordinance of 1865 was not in legal operation until the constitution of 1868 made it so. I do not so understand the case. The court did decide, however, that if the statute had fully run before the passage of the ordinance of 1865, though not until after the act of 1861, the cause of action was not revived. If that decision should be regarded as decisive of the law of Georgia, still it does not affect this case. But with the highest respect for the court by which it was made, it seems to me that the dissenting views of Justice Warner are founded on the better reason, and that they are sustained by the previous decision of the same court in Brian v. Banks, 38 Ga. 300. That, however, is a question of local law which it does not become necessary to decide.

Another point was made on the trial, which it becomes necessary for me to notice. It arises under the statute of this state, passed in 1826, and re-enacted in 1831, by which the security or indorser of any promissory note or other instrument, after the same has become due, may require the holder to proceed to collect the same, and if he does not proceed to do so within three months after such notice or requisition, the indorser or surety shall be no longer liable. Such a notice was

given in this case in December, 1861 [or January, 1862],[3] by the executrix to the payee of the note, who then held the same. But it is admitted that the principal resided and still resides in Alabama. By repeated decisions of the courts of this state it has been held, that if the principal does not reside in this state, the holder of the note is not bound by the law. He cannot be compelled to go out of the state to sue the principal. Those decisions are binding on this court. It was also contended on the trial, and made a point here, that on general principles of law, if the surety require the creditor to collect the money of the principal, and he neglects doing so when he can, and the principal afterwards becomes insolvent, the surety will be discharged. I do not so understand the law. The contract between the parties is this: If A. does not pay the debt, I., the surety, will pay it. To make it read, if A. does not pay the debt, I. will pay it, if you prosecute A. when I. request it, is to introduce a new term into the contract. Who is guilty of laches, the creditor, or the surety after the principal fails to pay the debt at maturity? Is it not the duty of the surety by his contract to pay it, and not subject the creditor to the necessity of bringing a suit? There may be equitable considerations which would make it extremely hard and unjust for the creditor to refuse to prosecute the principal. But when they arise, they belong strictly to equity, and a court of equity is the proper tribunal to consider them. Mr. Parsons in his work on Contracts, after reviewing some of the cases, says: "A surety is discharged where the creditor, after notice and request, has been guilty of a delay which amounts to gross negligence, and by his negligence the surety has lost his security or indemnity." Volume 2, pp. 22–25. How can a surety be said to have lost his security by the negligence of the creditor to sue, when by paying the debt himself, as was his duty to do, he could at any moment have instituted suit against the principal? In this case the omission of the creditor to sue a principal residing in another state could not, under any circumstances, as between him and the surety, make him chargeable with gross negligence. The motion for a new trial is denied.